# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

---

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

October 22, 2014

Ms. Zainab Ahmad and Ms. Celia Cohen
Assistants United States Attorney
United States Attorney's Office
271 Cadman Plaza East, 4ᵗʰ Floor
Brooklyn, N.Y.  11201

Mr. Adam Johnson
Supervisory Staff Attorney
CLC New York
Metropolitan Correctional Center
150 Park Row
New York, N.Y. 10007

<u>U.S.A. v. Alhassane Ould Mohamed, 13 CR 0527 (WFK)</u>

Dear Ms. Ahmad, Ms. Cohen, and Mr. Johnson:

I am attaching a letter from Ms. Vivianne Guevara, Director of Client and Mitigation Services at Federal Defenders of New York, Inc., in regard to the conditions of confinement of our client, Mr. Alhassane Ould Mohamed, and practical proposals for making those conditions more tolerable and humane.

I hope that we can include the contents of this letter in our forthcoming meeting.

Sincerely,

Douglas G. Morris, Esq.
Assistant Federal Defender
718-330-1209 (W)
718-855-0760 (FAX)
douglas_morris@fd.org

cc:    Ms. Mildred Whalen, Esq.
       Ms. Vivianne Guevara, LMSW
       Clerk of the Court
       Mr. Mohamed Ould Alhassane

1

# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and*
*Attorney-in-Chief*

*Eastern District*
Peter Kirchheimer
*Attorney-in-Charge*

October 22, 2014

Mr. Adam Johnson
Supervisory Staff Attorney
CLC New York
Metropolitan Correctional Center
150 Park Row
New York, N.Y. 10007

Ms. Zainab Ahmad and Ms. Celia Cohen
Assistants United States Attorney
United States Attorney's Office
271 Cadman Plaza East, 4th Floor
Brooklyn, N.Y. 11201

U.S.A. v. Alhassane Ould Mohamed, 13 CR 0527 (WFK)
Inmate #80830-053

Dear Mr. Johnson, Ms. Ahmad, and Ms. Cohen:

My knowledge of the present conditions of confinement of our client, Mr. Alhassane Ould Mohamed, and my recent visits with him have left me concerned about his well-being. I write to set forth these concerns and to recommend some practical measures that can address the problems.

As you know, the Metropolitan Correctional Center ("MCC") is housing Mr. Mohamed under Special Administrative Measures ("SAMs"), pursuant to the Attorney General's Memorandum of July 15, 2014. Although Mr. Mohamed has not incurred any disciplinary, behavioral or safety infractions, these SAMs impose an extreme form of solitary confinement.

1

Yet the dangers of solitary confinement for any person's mental health are clearly established. According to Dr. Stuart Grassian, of Harvard Medical School:

> [S]olitary confinement – that is confinement of a prisoner alone in a cell for all or nearly all of the day, with minimal environmental stimulation and minimal opportunity for social interaction – can cause severe psychiatric harm.  This harm includes a specific syndrome which has been reported by many clinicians in a variety of settings, all of which have in common features of inadequate, noxious and/or restricted environmental and social stimulation.  In more severe cases, this syndrome is associated with agitation, self-destructive behavior, and overt psychotic disorganization.

Stuart Grassian, "Psychiatric Effects of Solitary Confinement," a redacted version of a declaration submitted in September 1993 in Madrid v. Gomez, 889 F.Supp. 1146 (N.D. Calif., 1995);[1] see also  Grassian, S. (2006). "Psychiatric Effects of Solitary Confinement." Washington University Journal of Law and Policy (22), 325-383;[2] Haney, C. (2003). "Mental health issues in long-term solitary and 'supermax' confinement." Crime and Delinquency (49), 1, 124-156 ("[T]here is not a single published study of solitary . . . confinement in which nonvoluntary confinement lasting for longer than 10 days . . . . failed to result in negative psychological effects.  The damaging effects ranged in severity and included hypertension, uncontrollable anger, hallucinations, emotional breakdowns, chronic depression, and suicidal thoughts and behavior.") As you may also know, the United Nations has described solitary confinement as a form of torture. See United Nations. (2011). "Interim Report of the Special Rapporteur of the Human Rights Council on Torture and Other Cruel, Inhuman or Degrading Treatment or

---

[1] Retrieved from http://www.probono.net/prisoners/stopsol-reports/417726.Psychiatrict_Effects_of_Solitary_Conf inement_1993.

[2] Retrieved from http://openscholarship.wustl.edu/cgi/viewcontent.cgi?article=1362&context=law_journal_law_p olicy.

2

Punishment";[3] accord Human Rights Watch. (2014). Submission to the United Nations Committee against Torture.[4]

In Congressional testimony last winter, Mr. Charles Samuels, Jr., Director of the Federal Bureau of Prisons ("BOP"), acknowledged the hazards of solitary confinement and provided assurances that the BOP avoided them.  He stated:

> Inmates placed in restrictive housing are not "isolated" as that term may be commonly understood. . . . In most circumstances, inmates placed in restrictive housing are able to interact with other inmates when they participate in recreation and can communicate with others housed nearby. They also have other opportunities for interaction with family and friends in the community (through telephone calls and visits), as well as access to a range of programming opportunities that can be managed in their restrictive housing settings.[5]

Unfortunately, these reassurances do not apply to Mr. Mohamed.  Under the SAMs, he may not "interact with other inmates when they participate in recreation," he may not "communicate with others housed nearby," and he has had no opportunity "for interaction with family and friends in the community" through either telephone calls or visits.  Nor has he had access to any "programming opportunities . . . ."

Based on my visits with Mr. Mohamed, I am concerned that he is already suffering the effects of solitary confinement.  He has auditory hallucinations, short-term memory loss and trouble sleeping.  Because of language barriers, he cannot communicate with the mental health

---

[3] Retrieved from http://www.ohchr.org/Documents/HRBodies/HRCouncil/Regularsession/Session22/A.HRC.22.53_English.pdf.

[4] Retrieved from http://www.hrw.org/news/2014/10/20/submission-united-nations-committee-against-torture.

[5] Statement of Charles E. Samuels, Jr., Director, Federal Bureau of Prisons, before the Subcommittee on the Constitution, Civil Rights, and Human Rights Committee on the Judiciary, United States Senate for a Hearing on Reassessing Solitary Confinement: The Human Right, Fiscal, and Public Safety Consequences. Presented on February 24, 2014. Retrieved from http://www.judiciary.senate.gov/imo/media/doc/02-25-14SamuelsTestimony.pdf.

staff; he cannot understand the staff's questions, requests and demands; and he cannot convey his needs.

Even taking into account the national security concerns expressed in the SAMS, the MCC can avoid jeopardizing Mr. Mohamed's overall mental and physical health by providing him with structured activities, both alone and with others.  Such activities may include ones that Mr. Mohamed can undertake alone, but the MCC should provide them to him on a regular schedule.  Such activities may also include educational and vocational opportunities in groups that do not require Mr. Mohamed to speak English or to communicate with others.  I cannot imagine a reason why the MCC cannot provide such activities, and they would be important in mitigating the harm caused by solitary confinement.

Such activities include the following:

| | |
|---|---|
| **Activities in Solitary Confinement** | <ul><li>Television</li><li>Books with pictures</li><li>Self-guided language classes</li><li>Self-guided English classes</li><li>Exercise in larger spaces</li><li>Regularly scheduled visits with mental health or French/Arabic speaking staff</li></ul> |
| **Activities Involving Verbal Instructions but not Requiring Talking with Others** | <ul><li>Yoga</li><li>Chess</li><li>Receiving instruction in a sport</li><li>One on one basketball</li></ul> |

4

| | |
|---|---|
| **Existing MCC Activities in the General Population** | *Mental Health* <br>• Paint/Color-by-Number <br>• Drawing <br>• Guitar Instruction <br>• Yoga <br>• Chess <br>• Adult Continuing Education (ACE) <br><br>*Physical Health* <br>• Structured Activity Programs—Roof recreation <br>• Physical Assessments —Body weight, body fat, etc. <br>• "At Risk" health assessments, multi-disciplinary |

Our office and I would look forward to working with the MCC staff to create a structured plan for Mr. Mohamed's participation in these, and similar, activities that are appropriate for his age, physical ability, and educational level.

We look forward to hearing from you.

Respectfully submitted,

*Vivianne Guevara*

Vivianne Guevara, LMSW
Federal Defenders of New York, Inc.

5