

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ZA:SPN
F. #2012R00596

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

November 14, 2014

By Email and ECF

Douglas Morris, Esq.
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201

> Re:   United States v. Alhassane Ould Mohamed
> Criminal Docket Number 13-527 (WFK)

Dear Mr. Morris:

We write in response to your letter dated October 8, 2014, in which you variously object to, seek clarification of, and propose modifications to the Special Administrative Measures (SAMs) imposed on the above-referenced defendant on July 15, 2014 at the direction of the Attorney General.

As you know, the SAMs are meant to address the substantial risk that the defendant, an extremely violent individual with strong ties to active terrorist organizations in West Africa, might attempt to communicate with co-conspirators, encourage violent retaliation against government witnesses, or otherwise solicit or assist in violent or terrorist activities. The defendant has a long history of violent conduct, including the charged murder of a civilian Department of Defense employee in 2000, the murder of four Saudi nationals in 2009, and the murder of three Nigerien prison guards during the defendant's escape (his second) from prison. Strict limitations on the defendant's ability to communicate freely with fellow inmates and with outside parties were imposed—and are interpreted and enforced—in view of this background.

The government is mindful, of course, of the need to protect the defendant's mental and physical well-being as he awaits and prepares for trial. As discussed with you in person on October 24, 2014, and as detailed and demonstrated below, the government shares your goal of establishing conditions of confinement that address for your needs as defense counsel, the need to protect the defendant's health, and the government's security concerns.

I.      Interpretive Questions

        Throughout your October 8 letter, you raise questions concerning the scope of several of the SAMs provisions and object to the use of language you view as overbroad or vague. The drafting of the SAMs is, of necessity, an exercise in line drawing that does not permit of perfect precision. To the extent you perceive ambiguity in the terms of the SAMs, such terms should be interpreted using common sense, an understanding of the underlying purpose of the restrictions and, as you put it, your experience with the SAMs "as actually put into practice by and interpreted by the government, including the Bureau of Prisons."

        A.      SAMs Sections 2.a, 2.d, and 2.h.iii – Third Party Messages

        The SAMs provisions barring the forwarding of third-party messages from the defendant do not prevent defense counsel from using information provided by the defendant to develop a defense, including by sharing such information with investigators, researchers, and experts. To share information is not necessarily to forward a message. The former is permitted; the latter is not. Similarly, the SAMs permit investigators, researchers, and experts to rely on information provided by the defendant, through defense counsel, in conducting interviews or otherwise carrying out their roles in building a defense, so long as that reliance does not become active dissemination of the defendant's communications.

        The government does not interpret the provisions concerning third-party messages to preclude defense counsel from sharing observations about the defendant's health, spirits, or general well-being with the defendant's parents. In the government's view, such observations by defense counsel do not constitute the forwarding of third-party messages within the meaning of the relevant SAMs provisions. However, defense counsel may not forward personal messages from the defendant to third parties.

        B.      SAMs Section 2.h – Translation of Documents

        SAMs Section 2.h simply requires that if the defense deems it necessary to translate a document related to the defense in order to review the document with the defendant, such translation must be conducted by a pre-cleared translator/interpreter.

        C.      SAMs Section 2.h.i – Inflammatory Materials

        SAMs Section 2.h.i bars defense counsel from providing the defendant with inflammatory materials, materials that incite violence, military training materials, and materials that may be used to pass messages from inmate to inmate, unless such materials have been pre-cleared. This provision should not be interpreted to prevent defense counsel from sharing materials related to building a defense, such as discovery materials or the results of defense investigations.

D.     SAMs Section 3.c.ii – Informing Family Members of SAMs Restrictions

The government does not construe SAMs Section 3.c.ii to bar the defendant from calling family members who cannot speak or understand English.  The government agrees that, if feasible, and subject to Bureau of Prisons ("BOP") approval, it may make sense to have the interpreter assigned to monitor family calls translate the notice of SAMs provisions required to be provided to the defendant's family members.

E.     SAMs Section 3.a.9 – Defendant's Spouses

It is the government's understanding that the BOP interprets "family members" to include the defendant's spouses.

II.     SAMs Sections 2a, fn. 2; 2.e; and 2.f – Pre-Cleared Staff/Investigators

Regarding your objection to SAM Section 2a., fn.2, it is the government's understanding that the BOP cleared a doctor to visit your client and perform a psychological evaluation several weeks ago, and that a system is in place for clearing additional defense personnel as warranted.  Should you run into difficulty securing clearance for personnel other than the pre-cleared staff already covered by the SAMs, please do not hesitate to contact us.

Sections 2.e and 2.f are designed to limit the people who may meet alone with the defendant to core members of the defense team, including attorneys and paralegals. Should you have a need to send a staff investigator to meet with the defendant alone, without sending a paralegal, please let us know and we will explore the possibility of a one-time or temporary SAM modification, as with the recently cleared psychologist.

III.     SAMs Sections 2.g.ii(3)(a), fn. 4; 2.g.ii(3)(d), fn. 5; 3.c.iii; 3.d.ii; and 3.d.iii – Call Monitoring

The government does not interpret the SAMs to permit the monitoring of privileged attorney-client communications.  The government is not aware of any instance in which a government official has been privy to this defendant's attorney-client communications.

The BOP commonly records telephonic communications by inmates, and the defendant's communications are no exception.  The government will provide the defendant with any discoverable documentation or recordings of the defendant's phone calls.

IV.     SAMs Sections 2.b.ii; 3.a.ii; 3.b.iv; 3.g; 3.g.iii; 3.g.iv; and 3.g.v – Call and Mail Limitations

As discussed during our meeting last month, Section 3.b.ii sets a minimum number of calls per month, not a maximum.  The determination as to how many calls the defendant will be permitted is left to the discretion of the BOP.  It is the government's understanding that the BOP is willing to accommodate and/or facilitate a call to a group of

approved, immediate family members to the extent defense counsel is able to arrange such a call.

Similarly, Section 3.b.iv sets the maximum notice that may be required for the BOP to arrange for an interpreter to monitor calls with family, and Section 3.g.iv provides a maximum period of time that may be required for the government to review non-legal mail. These provisions set reasonable deadlines meant to reflect the outer limits of time permitted to carry out the relevant requirements. Please do not hesitate to contact us if, in actual practice, the implementing agencies exceed or regularly use all of the allotted time.

To the extent you find that, in practice, you are unable to arrange for the defendant to call you at times when a cleared interpreter can be present with you, please let us know and we will consider supporting an amendment to Section 2.b.ii along the lines you suggest.

The defendant may provide defense counsel with copies of non-legal mail once it has been cleared and forwarded to the defendant, and/or copies of any mail seizure notifications provided pursuant to Section 3.g.v, to the extent he chooses to do so. The government will provide the defense with copies of any discoverable, non-legal mail that is held back owing to security or related concerns.

Notwithstanding your suggestion to the contrary, the government obviously does not view Section 3.g as an encouragement to engage in ex parte or other improper communications with the defendant. Nor does the government interpret the provision to bar the Consular communications referenced in Section 12.

V.    SAMs Section 3.g.i – Dictation of Letters

A proposed amendment the SAMs to permit defense counsel to take dictation of letters to the defendant's family members, to be mailed by the defendant in accordance with the relevant SAMs provisions, is under review. We will inform you of the government's decision as soon as possible.

VI.    SAMS Sections 3.f; 6.b; 7.a; and 7.b – Communication And Contact Within The MCC

Provisions barring the defendant from communicating and associating with other inmates are directed in part at BOP officials tasked with keeping the defendant physically separated from other inmates and limiting the defendant's ability to communicate with other inmates. These provisions also require the defendant to avoid communication and contact with other inmates. Restricting the defendant's ability to communicate with his fellow inmates is among the basic security precautions typical of SAMs, particularly when, as here, the inmate has demonstrated that he is both extremely violent and able to inspire violence in others. Your suggestion that there is no reason to believe that the defendant would or could pass messages to other inmates is belied by his recent efforts to do just that, prompting disciplinary action by the BOP.

The government understands that the BOP has already taken steps to address your concern that the defendant is unduly isolated, and that such isolation may affect his mental well-being. First, the BOP reports that mental health and other staff visit the defendant regularly and make it a point to enlist the aid of an Arabic- or French-speaking staff member. Second, BOP staff has provided the defendant with picture language books. Third, if you purchase additional reading materials for the defendant (soft-cover books, for example) and arrange to have them shipped directly from the bookseller to the Metropolitan Correctional Center ("MCC"), MCC staff will arrange to have the materials reviewed and provide cleared materials to the defendant. Finally, the education staff at the MCC are exploring whether any additional activities can be made available to the defendant, although it is our understanding that he will not be permitted to receive privileges or programs beyond those offered to other inmates in administrative detention at the MCC.

VII.    Conclusion

We hope that this response aids your interpretation of the SAMs and provides some assurance that we take seriously the concerns you have raised concerning the isolating effects of the SAMs. We trust that you also take seriously the difficult security concerns posed by the defendant in light of his violent past and affiliation with active terrorist groups. Please contact us if you require further clarification of the SAMs or wish to seek formal modification of the SAMs. The defendant may also seek review of any of the restrictions imposed by the SAMs through the Administrative Remedy Program set forth at 28 C.F.R. pt. 542.

Very truly yours,

LORETTA E. LYNCH
United States Attorney

By:    /s/  Samuel P. Nitze
Zainab Ahmad
Celia A. Cohen
Samuel P. Nitze
Assistant U.S. Attorneys
(718) 254-6522/6147/6465

cc:    Ms. Mildren Whalen, Esq.
Clerk of the Court (WFK) (by ECF)