UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,             :

                                     :     **DECISION AND ORDER**

           v.                     :     13-CR-527 (WFK)

                                       :
ALHASSANE OULD MOHAMED, also known as :
"Cheibani,"                               :

                                       :
               Defendant.           :
-----------------------------------------------------------------X
**WILLIAM F. KUNTZ, II, United States District Judge:**

On September 13, 2013, Alhassane Ould Mohamed ("Defendant") was indicted for one count of Murder of an Internationally Protected Person and one count of Attempted Murder of an Internationally Protected Person. Dkt. 1 ("Indictment"). On June 19, 2015, Defendant filed an omnibus motion to (1) dismiss the charge of Attempted Murder of an Internationally Protected Person; (2) suppress statements made by Defendant; (3) exclude from trial the records of Defendant's alleged statements unless the creators of those records testify subject to cross-examination; (4) suppress all eye-witness identifications; (5) preclude evidence of prior alleged acts from trial; (6) order the Government to make early disclosures of all information material to the defense under Federal Rule of Criminal Procedure 16; (7) order the Government to immediately disclose *Brady/Giglio* materials; (8) order the Government to immediately disclose its witness list; (9) urge the Government to disclose Jencks Act material early; and (10) order the return of Defendant's property or, in the alternative, hold a hearing. Dkt. 55-1 ("Def. Mot.") For the reasons stated below, Defendant's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

On September 13, 2013, Defendant was charged by indictment ("Indictment") with one

count of Murder of an Internationally Protected Person, in violation of 18 U.S.C. §§ 1116(a),

1116(c), and 1111(b) ("Count I"), and one count of Attempted Murder of an Internationally

Protected Person in violation of 18 U.S.C. §§ 1116(a), 1116(c), and 1113 ("Count II").

Indictment at ¶¶ 19-22. The Indictment alleges Defendant murdered William Bultemeier, an

employee of the United States Department of Defense and a retired United States Army Master

Sergeant, and attempted to murder Christopher McNeely, a United States Marine Corps Staff

Sergeant, in Niamey, Niger in 2000. Indictment at ¶¶ 2, 5, 9-18.

## ANALYSIS

### I.     Motion to Dismiss Count II of the Indictment

Defendant argues Count II of the Indictment should be dismissed because it charges Defendant with attempted murder, which is barred by the statute of limitations because thirteen years elapsed from the time of the alleged crime to the time of Defendant's Indictment.  Def. Mot. at 6-13; Dkt. 69 ("Reply") at 4-7.  Defendant's argument fails.

18 U.S.C. § 3286(b) states, "[n]otwithstanding any other law, an indictment may be found . . . *at any time without any limitation* for any offense listed in section 2332b(g)(5)(B), if the commission of such offense resulted in, or created a foreseeable risk of, death or serious bodily injury to another person."  18 U.S.C. § 3286(b) (emphasis added).  Attempted murder is an offense listed within 18 U.S.C. § 2332b(g)(5)(B).  *See* 18 U.S.C. § 2332b(g)(5)(B) (listing violation of 18 U.S.C. § 1116).  Here, the charged conduct, conceded by both Government and Defendant to be "aiding and abetting attempted murder," involved shooting Christopher McNeely with an AK-47 assault rifle which created a foreseeable risk of such injury and further resulted in serious bodily injury.  Reply at 4; Opp. at 7-8; Indictment at ¶¶ 14, 18.

Defendant nonetheless claims that because the charged conduct was alleged to have occurred in 2000, he is subject to the pre-2001 version of 18 U.S.C. § 3286(b), which imposed an eight-year statute of limitations for any non-capital violations of 18 U.S.C. § 1116.  *See* 18 U.S.C. § 3286, Historical and Statutory Notes; *see also* Reply at 5; Indictment.  According to Defendant, to hold otherwise would run afoul of the *ex post facto* clause of the Constitution. Reply at 5-7 (citing *Stogner v. California*, 539 U.S. 607, 632-33 (2003) (holding application of an extension in the statute of limitations made after the original period has expired violated the *ex post facto* clause)).

2

In *Stogner v. California*, however, the Supreme Court carefully left in place applications of extensions of limitations periods made after the offense but before the expiration of the original period. Reply at 5-6; *see also Stogner*, 539 U.S. at 618-619 (collecting cases) (internal citations omitted). Here, under the eight-year statute of limitations period in effect in 2000, Defendant's statute of limitations would have expired in 2008. However, because the 2001 extension of the limitations period occurred after the 2000 crime but before the expiration of the original period in 2008, applying the extension of the limitations period is appropriate under *Stogner*. *See* 18 U.S.C. § 3286, Historical and Statutory Notes.

Defendant argues applying an extension would fall into category two and four of *ex post facto* clause violations described in *Stogner*. Reply at 7. Under category two of *Stogner*, Defendant argues applying an extension here would make the charged crime "greater than it was[] when committed." *See Stogner*, 539 U.S. at 612 (internal quotation marks, emphasis, and citation omitted). Under category four of *Stogner*, Defendant argues an extension would "alter[] the legal rules of evidence, and receive[] less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Id.*

The *ex post facto* clause violations described in *Stogner*, however, do not concern the application of an extension made *before* the expiration of the original period, and this is fatal to Defendant's argument. The second category of *ex post facto* violations described in *Stogner*— making a crime greater than it was when committed—applies "when a new law inflicts punishment upon a person *then not subject* to that punishment, to any degree[.]" *Stogner*, 539 U.S. at 613-614 (emphasis added). This category of *ex post facto* violations imposes punishment on one who is no longer "liable to any punishment[,]" which is true of anyone who has committed an offense for which the original limitations period is expired. *Id.* at 613 (internal

citation and quotation marks omitted). A person who has committed a crime for which the limitations period has *not* expired *is* subject to the punishment prescribed by law—he simply has not been caught or charged yet. Extending the limitations period, and applying that extension, inflicts punishment upon a person who is *then subject* to that punishment. *Cf. id.* at 614 (describing the second category of *ex post facto* violations as involving "inflicting *punishments*, where the party was not, by *law*, liable to *any punishment*") (internal quotation marks and citation omitted) . Similarly, the fourth *Stogner* category—altering the rules of evidence to receive less or different evidence to convict the offender than was required at the time of the offense—applied in *Stogner* because the statute of limitations reflects "a legislative judgment that, after a certain time, no quantum of evidence is sufficient to convict." *Id.* at 615 (citation omitted). An extension of the statute of limitations period after the original period has expired is "to permit conviction on a quantum of evidence where that quantum, at the time the new law is enacted, would have been legally insufficient." *Id.* at 616. This is not true of an extension of a statute of limitations period before the original period has expired because the law at the time of the extension still permits conviction based on the same "quantum of evidence." *Cf. id.* (finding *ex post facto* violations exist where "the new law would violate previous evidence-related legal rules by authorizing the courts to receive evidence ... which the courts of justice would not previously have admitted as sufficient proof of a crime") (internal quotation marks, brackets, and citations omitted).

Defendant concedes *Stogner*'s rationale relies on the time the new law was enacted, but asks the Court to use the time the offense was committed as a reference instead because "application of an extended statute of limitations . . . to prosecute fifteen years later . . . offends th[is] principle." Reply at 7. The Court declines to do so. The Supreme Court in *Stogner* made

4

a careful, reasoned distinction between expired and unexpired limitations periods. *Stogner*, 539
U.S. at 618-619 (collecting cases). Furthermore, federal courts interpreting *Stogner* have applied
that distinction, upholding applications of statute of limitations periods made before the
expiration of the original period. *See, e.g.*, *Renderos v. Ryan*, 469 F.3d 788, 795-96 (9th Cir.
2006); *Costella v. Clark*, 08-CV-1010, 2011 WL 940868, at *23 (N.D. Cal. Mar. 18, 2011)
(Hamilton, J.) (citing *Renderos*, 469 F.3d at 793-96). Accordingly, Defendant's motion to
dismiss Count II is hereby DENIED.

## II.     Motion to Suppress Defendant's Prior Statements

Defendant argues the Court should suppress all of Defendant's prior statements (the
"Statements at Issue") the Government seeks to admit at trial. Dkt. 66 ("Opp.") at 9; Reply at 8-
9. The Statements at Issue are thus far identified as 1a, 1b, 1c, 8, 9, 15, 16, 17, and 18 in
Defendant's and the Government's papers. Def. Mot. at 14; Opp. at 9. Specifically, Defendant
argues the Court should suppress the Statements at Issue as procured by foreign authorities by
compulsion in violation of the Fifth Amendment right of due process and against self-
incrimination, and or as procured under compulsion and in violation of Defendant's *Miranda*
rights by American officials. Reply at 11-30. In the alternative, Defendant argues the Court
should hold an evidentiary hearing to determine whether the statements were obtained by
compulsion or in violation of Defendant's *Miranda* rights. *Id.* Although the Government
originally opposed an evidentiary hearing on the Statements at Issue, the parties have since
signed a stipulation agreeing to a suppression hearing beginning on January 25, 2016. *See* Dkt.
76 ("Stipulation"). The Court therefore finds Defendant's request for an evidentiary hearing on
the issue of whether the Statements at Issue should be suppressed is MOOT, and hereby
RESERVES judgment on the possible suppression of the Statements at Issue until after the

hearing scheduled to commence on January 25, 2016. The Court further RESERVES judgment on Defendant's motion to suppress the other statements identified in Defendant's papers because the Government has indicated uncertainty as to whether it will seek introduce those statements for impeachment purposes only. *See* Opp. at 9 n.2; Transcript of Oral Argument of October 29, 2015 ("Oral Argument Tr.") at 36:20-39:13.

### III.  Motion to Exclude From Trial the Records of Defendant's Alleged Statements Unless the Creators of those Records Testify Subject to Cross-Examination

Defendant argues the Sixth Amendment's prohibition on testimonial hearsay forbids the Government from introducing "records, summaries, or notes of [Defendant's] alleged statements unless the creators of those documents testify and are subject to cross-examination." Def. Mot. at 49. Defendant argues seven of the Statements at Issue the Government seeks to introduce "consist of police reports, summaries or notes[,"], while the other statements are foreign legal transcripts. *Id.* at 52 (discussing statements 1a, 1b, and 18), 53 (discussing statements 1c and 8), 54 (discussing statements 16 and 17), 55 (discussing statements 9 and 15); Opp. at 9. Defendant argues the written records of these statements are testimonial hearsay, and therefore "are inadmissible unless at trial the defense can cross-examine their creators." Def. Mot. at 52. Since the Government has not stated any intention of introducing the records without also introducing the testimony of the creators of those records at trial, the Court hereby RESERVES judgment on the question until the Government indicates a specific intention.

### IV.  Motion to Suppress All Eyewitness Identifications

Defendant moves to suppress "(i) testimony concerning pretrial eyewitness identifications of [Defendant] that were unduly suggestive, and (ii) any in-court identification of [Defendant] by those same witnesses, because their identifications lack indicia of reliability

independent of the tainted pretrial identifications." Def. Mot. at 58. In the alternative, Defendant asks for a "pretrial hearing to fully develop the record on the unduly suggestive nature of the pretrial identifications and the lack of indicia of independent reliability for any in-court identification." *Id.* at 78.

The identifications at issue are (1) a 2001 identification by an eyewitness to the murder of William Bultemeier, from an array with three photographs, the only detailed account of which is from September 14, 2012, which the Government seeks to admit pursuant to Federal Rules of Evidence 801(d)(1)(c); (2) a February 2002 identification by the same eyewitness, from a presentation of Defendant's photographs alone outside of an array, the only account of which is from August 13, 2002, which the Government seeks to admit pursuant to Federal Rules of Evidence 801(d)(1)(c); and (3) a 2014 identification made by a different eyewitness, the victim of a 2004 carjacking, from an array of twenty-four (24) photographs, which the Government seeks to introduce under Federal Rule of Evidence 404(b). Opp. at 32-33, 35-36, 42; Opp. Ex. F at 1-3; Dkt. 56-6 ("Ex. C") at PDF 3, PDF 22-23.

The Government originally asked the Court to deny Defendant's motion to suppress, arguing "neither of the identifications of the two witnesses that the [G]overnment intends to rely upon at trial were unduly suggestive, and, in any event, both were independently reliable." Opp. at 30. However, the parties have since agreed to a suppression hearing regarding the eyewitness testimony beginning on January 25, 2016. *See* Stipulation. Accordingly, the Court hereby finds Defendant's request for a suppression hearing is MOOT, and RESERVES judgment on the possible suppression of the eyewitness testimony until the after the suppression hearing scheduled to commence on January 25, 2016.

## V.     Motion to Preclude Other Alleged Prior Acts

The Government has put Defendant on notice that it will seek to introduce evidence at trial of the 2004 car-jacking of an American missionary in Niger pursuant to Federal Rule of Evidence 404(b). Def. Mot. at 79. The Government argues the evidence is "relevant and admissible to prove the defendant's identity as the perpetrator of the charged offense through the use of a common modus operandi." Opp. at 46. Defendant now seeks to preclude the Government from introducing this evidence at trial as inadmissible propensity evidence and as unduly prejudicial and irrelevant. Def. Mot. at 79, 82-94.

Under Federal Rule of Evidence 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, evidence of a crime, wrong, or other act is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). In applying Rule 404(b), the Second Circuit follows an "inclusionary rule, that is, evidence of other bad acts are generally admissible for any purpose, other than to demonstrate a propensity to commit the charged offense, provided the evidence is relevant and the probative value versus unfair prejudice balancing test tips in favor of inclusion." *United States v. Demosthene*, 03-CR-1409, 2004 WL 1243607, at \*7 (S.D.N.Y. June 4, 2004) (Marrero, J.) (citations omitted). Additionally, courts should issue appropriate limiting instructions to the jury to consider the evidence only for its proper purpose, and not as evidence of propensity. *See United States v. Moran-Tala*, 726 F.3d 334, 345 (2d Cir. 2013). Evidence of similar bad acts "is relevant if the jury could reasonably find by a preponderance of the evidence that the act occurred and that the defendant committed the act." *United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990) (citation omitted).

Here, Defendant argues the 2004 carjacking evidence should be precluded because (1) admitting any alleged bad act after 2002 would be unduly prejudicial, by inviting the jury to consider a 2000 murder in the light of post-2002 geopolitical concerns regarding terrorism; (2) the Government cannot show Defendant was involved in the 2004 carjacking because Defendant does not speak Hausa as the attackers did (although Defendant concededly speaks French, which the attackers also spoke), and because of the implausibility of an eyewitness making a reliable identification a decade after the crime; and (3) the 2004 carjacking is not similar in any meaningful way to the charged crimes in this action because the only similarities—the carjacking itself, the use of an AK-47, and the targeting of a Toyota Land Cruiser—are so general as to be meaningless. Def. Mot. at 82-88. Defendant further argues the 2004 carjacking has too many differences from the charged crimes—including time of day, location, whether the attacked vehicle was moving or parked, number of attackers, presence of diplomatic plates, and involvement of robbery of valuables—to be admissible. *Id.* at 87-88. Additionally, Defendant argues admission of evidence concerning the 2004 carjacking would be unduly prejudicial because it would create a "trial within a trial" and would greatly increase the burdens on the defense investigation. Reply at 47. The Government, on the other hand, has cited a proper purpose, that of establishing modus operandi, in seeking to admit the evidence of the 2004 carjacking. Opp. at 46, 48.

First, the Court finds the 2004 carjacking is relevant to the Government's cited proper purpose for seeking to identify the prior bad act, namely modus operandi. The 2004 carjacking is sufficiently similar to the charged crimes to be relevant in proving modus operandi. In the charged crimes of the Indictment, the two assailants used a Toyota pick-up truck. Ex. C at PDF 9. They targeted a Toyota Land Cruiser. Indictment at ¶ 9. The assailants demanded Mr.

Bultemeier's car keys and shot him when he did not obey immediately, causing a fatal injury. Indictment at ¶¶ 11-12. They then took Mr. Bultemeier's vehicle and drove away in it. *Id.* at ¶ 16. Similarly, in the 2004 crime, the three assailants both drove and targeted a Toyota Land Cruiser pick-up truck. Ex. C at PDF 22. The assailants brandished a gun at the victims' vehicle, and when the victims did not stop immediately, the assailants shot at the vehicle, causing a severe injury. *Id.* The assailants ordered the victims out of the vehicle and drove away in the victims' vehicle. *Id.* at PDF 22-23. Despite the relative commonality of carjackings and Toyota pickup trucks, the combination of the presence of Toyota pickup trucks both as targets and as transportation to the crime in two carjackings, the targeting of groups including Westerners in both instances, and the tactic of shooting and seriously injuring victims who do not comply immediately, are sufficient to establish a common modus operandi. "The similarity sufficient to admit evidence of [other bad] acts to establish a recurring *modus operandi* need not be complete; it is enough that the characteristics relied upon are sufficiently idiosyncratic to permit a fair inference of a pattern's existence." *United States v. Sliker*, 751 F.2d 477, 487 (2d Cir. 1984) (emphasis in original). For example, in *United States v. Henry*, 23 F. Supp. 3d 131, 137 (E.D.N.Y. 2014) (Mauskopf, J.), the court held a defendant's modus operandi of using a small business, non-descript packaging, and fraudulent paperwork to export restricted goods was sufficiently idiosyncratic to permit evidence of prior fraudulent shipment of hazardous material where the defendant was charged with unlicensed shipment of microwave amplifiers.

Second, the testimony of a single witness can be enough to permit a reasonable jury to find a defendant committed a prior act by a preponderance of the evidence. *United States v. Nelson*, 38 F. App'x 386, 391 (9th Cir. 2002) (citation omitted); *United States v. De Palma*, 01-CR-1032, 2002 WL 1788030, at *1-3 (S.D.N.Y. Aug. 2, 2002) (Jones, J.) (admitting testimony

of single witness as evidence of prior act).  The Government has stated it wishes to introduce the eyewitness testimony of a victim of the 2004 carjacking.  *See* Section IV *supra*.  The Court will not rule on whether the victim-witness's identification was unduly suggestive or unreliable until after the suppression hearing scheduled to begin January 25, 2016.  However, should the Court decide the victim-witness's testimony is not unduly suggestive or unreliable, a reasonable jury could find Defendant committed the prior act by a preponderance of the evidence.  In ruling now, the Court makes no assessment of the victim-witness's credibility and no finding that the Government has proven or will prove anything by a preponderance of the evidence.  Nor does the Court indicate any intention to rule the victim-witness's testimony is not unduly suggestive or unreliable.  The Court holds only that *if* the victim-witness's testimony is found not unduly suggestive, a reasonable jury *could* on that basis find by a preponderance of the evidence that the carjacking occurred and Defendant was involved.  *See, e.g.*, *Huddleston v. United States*, 485 U.S. 681, 690 (1988).

Finally, the Court finds the admission of the 2004 carjacking is not unduly prejudicial. *See, e.g.*, *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (holding district court did not abuse discretion in admitting evidence of defendant police officer choking arrestee where defendant police officer was charged with choking a different arrestee, prior act was not more inflammatory than charged crime, and district court issued limiting instruction).  First, the Government states it seeks to admit evidence of the 2004 carjacking without linking it to "broader trends concerning kidnappings or terrorism[,]" and the Court will issue limiting instructions for this purpose if requested.  Opp. at 53.  Indeed, at the oral argument on this omnibus motion, the Assistant United States Attorney stated, "[t]he [G]overnment never intended to use the word 'terrorism' in its proof of this crime."  Oral Argument Tr. at 14:12-

14:13.  Second, the 2004 carjacking is considerably less inflammatory than the charged crimes.

No one died during the 2004 carjacking, although the carjackers shot one victim in the leg,

causing a serious injury.  Ex. C. at PDF 22-23.  In contrast, the charged crimes include the

murder of Mr. Bultemeier and the serious, lasting injuries of Mr. McNeely.  Indictment at ¶¶ 17-

18.  In light of the more serious charged crimes, the introduction of the 2004 carjacking would

not be unduly prejudicial.  Accordingly, Defendant's motion to preclude the eyewitness

testimony regarding the 2004 carjacking on the ground that such testimony is unduly prejudicial

and irrelevant is hereby DENIED, with leave to replead should the Court suppress the victim-

witness's testimony as unduly prejudicial.

Defendant also seeks to preclude the Government from introducing evidence of several

other alleged bad acts, including murders, kidnappings, smuggling, and a car theft.  Def. Mot. at

79, 89-94.  The Government argues it is premature to preclude such evidence at this stage.  Opp.

at 54.  The Government notes no trial date has been set yet, and Rule 404(b) only requires the

Government to provide reasonable notice before trial of any 404(b) evidence it seeks to

introduce.  *Id.*  The Government has not stated any intention of introducing evidence of the

alleged acts to which Defendant refers.  Accordingly, the Court agrees it would be premature to

preclude evidence of these alleged acts at this stage.  Defendant's motion to preclude evidence of

such acts at this time is hereby DENIED without prejudice.

## VI.    Motion to Order Disclosures

Defendant asks the Court to order various disclosures, to which the Government objects.

The Court will address each of the requested disclosures in turn.

12

### A. Rule 16 Disclosures

#### 1. Alleged Statements to Inspector Maïga

Defendant first asks the Court to order the disclosure of writings or recordings memorializing statements allegedly made by Defendant to Malian Inspector Lamine Maïga. Def. Mot. at 95. Specifically, Defendant asks for (1) reports by Inspector Maïga or other police officers memorializing those alleged statements at the time of their interviews with Defendant; (2) the report, if any, by the FBI agent of the agent's telephone interview with Inspector Maïga, in which Inspector Maïga communicated Defendant's alleged statements; and (3) the portion, if any, of Inspector Maïga's grand jury testimony relating to Defendant's statements. Def. Mot. at 95-96. On October 29, 2015, the Government represented to this Court and Defendant that it would provide "the full interview of [Inspector Maïga]" and Inspector Maïga's grand jury testimony, which "are the only documents that we have with recorded statements with respect to [Inspector Maïga]." *See* Oral Argument Tr. at 45:20-46:3. Furthermore, the Government represented  it would provide these writings or recordings "right away[,]" which Defendant indicated was acceptable. *Id.* at 46:13-47:1. Accordingly, the Court finds Defendant's motion on this point is MOOT, provided the Government abides by its representations made before the Court.

#### 2. Polygraph Materials

Defendant next requests "the polygraph paper charts or digital recording[s], any audio or video recording[s] of the polygraph examination, all questions asked of [Defendant] (control, neutral, and relevant), any written or recorded French interpretation of those questions, and [Defendant's] responses, if separately noted from the polygraph paper charts or digital recording[s]" from the polygraph performed on February 10, 2002. Def. Mot. at 95-96.

On October 29, 2015, the Government stated before this Court and Defendant that it had

provided all the polygraph materials Defendant requested. Oral Argument Tr. at 47:16-48:15.

Based on this representation, Defendant was satisfied. *Id.* at 48:17-18. . Accordingly, the

Court finds Defendant's motion on this point MOOT.

### 3. Documents and Objects

Defendant next requests, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E), the

right to inspect the following:

(1) Any items taken from [Defendant] or his home upon his arrest on December 26, 2000. [Defendant] also request[s] any inventories made of any items seized from [Defendant] or his home on December 26, 2000, or a later date.

(2) Any items taken from [Defendant] upon his arrest by French forces in November 2013, including, but not limited to, any cell phones in his possession, any SIM cards in his possession, any ledgers or notebooks in his possession, and any personal papers or official documents in his possession.

(3) Copies of any photographs used in any identifications of [Defendant], as well as copies of any memorializations of photo arrays or photo spreads used in identification proceedings of [Defendant], including those resulting in negative identifications.

(4) Any vehicles or other property alleged to have been involved in the instant offense or 404(b) offenses.

Def. Mot. at 96. Specifically, Defendant requests the Government "either (a) permit [Defendant]

the right to inspect, review, and copy [these items] or (b) confirm that [the Government] has

contacted and requested access from the appropriate foreign governments, law enforcement

agencies, or like entities and report on the status of such contacts." Reply at 56. The

Government has not opposed this request. Opp. at 55-60.

Federal Rule of Criminal Procedure 16(a)(1)(E) states:

Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

> (i) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E). For an item to be material to preparing the defense, "[t]he burden on Defendant[] is not high: There must be some indication that the pretrial disclosure of the disputed evidence would . . . enable[] [Defendant] significantly to alter the quantum of proof in his favor." *United States v. Nashash*, 12-CR-778, 2014 WL 169743, at *1 (S.D.N.Y. Jan. 15, 2014) (Crotty, J.) (citing *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991)) (internal quotation marks omitted).

The first two items Defendant requests clearly fall into the explicit purview of Rule 16(a)(1)(E)(iii) as items obtained from the Defendant. Moreover, the Government has represented to this Court and Defendant that it has already turned over these identified items and unsuccessfully searched for any inventories, but will make another search. Oral Argument Tr. at 48:19-49:9. On October 29, 2015, Defendant modified his request for the cell phones and SIM cards into a request for the forensic analysis of the cell phones. *Id.* at 49:13-49:17. The Government represented it would turn over the forensic analysis. *Id.* at 49:18.

With respect to the remaining items Defendant requests, the Court finds these items to be material to preparing the defense. Copies of photographs used in identification proceedings are material to the defense because the Government intends to rely on the identifications of two eyewitnesses—one who identified Defendant in 2001 and 2002 as the perpetrator of the 2000 charged crimes, and another who identified Defendant in 2014 as the perpetrator of the 2004 uncharged carjacking—in its case-in-chief at trial. Opp. at 35, 42. Photographs used in these or other identification proceedings, including proceedings resulting in a negative identification, bear directly on the question of whether reliable identification procedures were used. *See, e.g., United States v. Maisonet*, 08-CR-69S, 2009 WL 2876170, at *6 (W.D.N.Y. Sept. 3, 2009)

(Schroeder, Jr., Mag. J.) (ordering the Government to produce any visual or audio identification procedures used in the case). Furthermore, the vehicles used in the charged crimes and 404(b) offense are material. The similarity of the vehicles is a component of the Government's attempt to prove Defendant's modus operandi. *See* Section V *supra.* The vehicles are also material insofar as they are alleged instrumentalities of the charged crimes. *See, e.g., United States v. Duong,* 01-CR-20154, 2010 WL 532513, at *5 (N.D. Cal. Feb. 9, 2010) (Trumbull, Mag. J.) (ordering the Government, pursuant to Rule 16(a)(1)(E), to allow defendant to inspect vehicles belonging to co-defendants or alleged co-conspirators in connection with the charges in the action).

Accordingly, Defendant's request for documents and objects pursuant to Rule 16(a)(1)(E) is hereby GRANTED. The Government is hereby ORDERED to make such documents and objects available for inspection and copying or photographing, insofar as such documents and objects exist and are within the Government's possession, custody, or control.

### 4. Reports of Examinations and Tests

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(F), Defendant also requests copies or an opportunity to make copies of various DNA, fingerprint, ballistics, and other analyses the Government intends to use. Def. Mot. at 96-97. The Government states it has provided these analyses, or has requested them and will provide them as soon as received, in a timely fashion, and in advance of trial. Opp. at 55. Defendant does not contradict the Government's assertions, but seeks leave to request further discovery in the future, should Defendant conclude, after review, that there are additional reports and data. Reply at 59. Additionally, Defendant requests further information on the February 2002 polygraph test. *Id.* In addition to repeating the request for records discussed in Section VI.A.2. *supra,* Defendant

requests: (1) a photo or a description of the location within the Bamako, Mali jail where the polygraph was performed; (2) the length of the interview prior to the polygraph examination as Defendant states the entire proceeding apparently lasted six hours; (3) whether Defendant was provided with food, water, or bathroom breaks during the examination; and (4) who else if anyone, apart from the examiner, the interpreter, and Defendant, were present at the examination. *Id.*

> Federal Rule of Criminal Procedure 16(a)(1)(F) states,
>
> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment, if:
>
> > (i)  the item is within the government's possession, custody, or control;
> > (ii) the attorney for the government knows—or through due diligence could know—that the item exists, and
> > (iii)the item is material to preparing the defense or the government intends to use the item in its case-in-chief at trial.

Fed. R. Crim. P. 16(a)(1)(F).

None of the additional information requested by Defendant regarding the polygraph test constitutes a result or a report of any examination, test, or experiment. Accordingly, the Court DENIES Defendant's motion on this ground as the request falls outside the purview of Rule 16(a)(1)(F). Defendant may seek further discovery in the future should he have grounds for believing there are additional discoverable reports, records, or data.

### 5.  Expert Witnesses

Defendant requests immediate disclosure of expert witness materials pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G). Def. Mot. at 97. The Government claims it recently disclosed its DNA testing and polygraph experts, and will do the same for the fingerprint analysis and ballistics testing experts "in a timely fashion in advance of trial." Opp. at 55.

Based on the Government's representation of its intent  to disclose experts in a timely fashion, Defendant's motion with respect to expert witnesses is hereby DENIED.

### B. *Brady/Giglio* Material

Defendant moves the Court "for an order compelling the [G]overnment to immediately disclose all exculpatory material in its possession that falls within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963), and all impeachment material within the scope of *Giglio v. United States*, 405 U.S. 150 (1972)." Def. Mot. at 99.  Defendant argues the *Brady* and *Giglio* material must be disclosed immediately for it to be of effective use to Defendant, given the difficulty of obtaining evidence of and contacting and interviewing foreign witnesses to crimes which took place almost fifteen years ago. *Id.* at 100.  Defendant further argues the Government cannot be relied upon to provide such without a court order, citing in support a recent case in which the United States Attorney's Office for the Eastern District of New York failed to meet its *Brady* obligations.  Reply at 48-49 (citing *United States v. Mahaffy*, 693 F.3d 113, 130 (2d Cir. 2012)).  Defendant also states he has received no response to his *Brady* requests of July 8, 2015 and of July 16, 2015.  Reply at 49; *see also* Dkt. 59; Dkt. 63.  Accordingly, Defendant moves the Court to (1) "order the [G]overnment to again review its files for information that is favorable to the [D]efense, pursuant to *Brady*, *Giglio*, and *Mahaffy*, and disclose any such information forthwith[,]" and (2) "impose a standing order that the [G]overnment continue to disclose such material as it finds it."  Reply at 51.

The Government states it will comply with its *Brady/Giglio* disclosure obligations, but that Defendant is seeking premature disclosure of *Giglio* material to which he is not yet entitled. Opp. at 56.  The Government argues "[i]t is well-settled that impeachment material is not necessary for trial preparation."  *Id.* (citations omitted).

"The Supreme Court's decision in *Brady* . . . requires that the [G]overnment disclose material evidence favorable to a criminal defendant." *Lacey v. Perez*, 10-CV-1460, 2013 WL 1339418, at \*6 (E.D.N.Y. Mar. 28, 2013) (Feuerstein, J.) (citing *Mahaffy*, 693 F.3d at 127) (internal quotation marks omitted). *Brady* applies to evidence that is exculpatory to the defendant or "would be an effective tool in disciplining witnesses during cross-examination." *Mahaffy*, 693 F.2d at 127 (citing *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002)) (internal quotation marks omitted). "The [G]overnment must disclose all *Brady* and *Giglio* material in time for its effective use at trial. The required timing of such a disclosure depends on . . . the particular circumstances of each case; accordingly, the Second Circuit has refrained from defining the phrase 'in time for effective use.'" *United States v. Badoolah*, 12-CR-774, 2014 WL 4793787, at \*16 (E.D.N.Y. Sept. 25, 2014) (Matsumoto, J.) (internal citations and quotation marks omitted). There is no pre-trial right to *Giglio* material, which specifically concerns impeachment. *See, e.g., id.; United States v. RW Prof'l Leasing Servs. Corp.*, 317 F. Supp. 2d 167, 179 (E.D.N.Y. 2004) (Spatt, J.) (citing *United States v. Nixon*, 418 U.S. 683, 701 (1974)) (holding there is no pre-trial discovery right to *Giglio* materials). However, "[a] district court has the discretion to order *Brady/Giglio* disclosure at any time as a matter of sound case management." *United States v. Taylor*, 17 F. Supp. 3d 162, 177 (E.D.N.Y. 2014) (Irizarry, J.) (internal quotation marks and citations omitted).

Courts in the Second Circuit generally do not compel immediate disclosure of *Brady/Giglio* materials where (1) the Government represents it is aware of and will comply with its *Brady/Giglio* obligations, and (2) the Defense does not provide any reason for suspecting the Government will not comply. *See, e.g., United States v. Rivera*, 13-CR-149, 2015 WL 502080, at \*13-14 (E.D.N.Y. Feb. 5, 2015) (Matsumoto, J.) (declining to compel early disclosure where

Government represented it would produce *Brady* materials immediately upon becoming aware of

such materials and would produce *Giglio* materials in advance of trial); *Badoolah*, 2014 WL

4793787 at *16 (same).  Early disclosures, however, may be appropriate where the Defense

would require significant time to investigate and make effective use of the disclosure. *See, e.g.*,

*United States v. Barret*, 824 F. Supp. 2d 419, 455-456 (E.D.N.Y. 2011) (Matsumoto, J.)

(ordering early *Giglio* disclosures because a later disclosure could "disrupt the flow of trial")

(citation omitted); *United States v. Aparo*, 221 F. Supp. 2d 359, 366-367 (E.D.N.Y. 2002)

(Glasser, J.) (ordering disclosure of *Giglio* materials no later than four weeks before trial in

multi-defendant conspiracy and racketeering case because of complexity of case).

      Here, the Government represented at oral argument on October 29, 2015, that it will

provide *Brady/Giglio* material regarding its eyewitnesses four weeks prior to the suppression

hearing scheduled for January 25, 2016, and that it will search for any *Brady/Giglio* material that

would require earlier disclosure.  Oral Argument Tr. at 60:18-61:7.  Based on this representation,

the Court finds that the Government is aware of its obligations and will comply with such

obligations before trial.  Moreover, the Defendant has provided no reason for suspecting the

Government will fail to comply with its obligations.  Accordingly, the Court DENIES

Defendant's motion for immediate *Brady/Giglio* disclosure as premature.  The Court

REQUIRES the Government to fully abide by its representations made before the Court that it

will disclose *Brady/Giglio* material regarding the Government's eyewitnesses no later than four

weeks prior to the suppression hearing scheduled to begin on January 25, 2016.  The Court will

further require the Government to disclose any other *Brady/Giglio* material to Defendant at an

appropriate interval prior to the trial.

### C. The Government's Witness List

Defendant also requests that the Court order the early disclosure of the Government's witness list, arguing the totality of the circumstances weighs in favor of early disclosure. Def. Mot. at 101-03. Defendant notes in particular that (1) the charged crimes took place long ago and on a different continent, making investigation difficult and costly; and (2) there is no evidence or even allegation of Defendant ever having tampered with a witness. *Id.* at 102-03; Reply at 52. The Government argues that Defendant's prior murder conviction in Niger and his alleged connections to multiple at-large terrorist groups create a specific need for concealment of the Government's witnesses. Opp. at 57.

To compel immediate disclosure of the Government's witness list, Defendant must make specific showings that : (1) Defendant's need for disclosure outweighs the Government's need for concealment; (2) immediate disclosure is material to the preparation of the Defense; and (3) immediate disclosure is reasonable in light of the circumstances surrounding the case. *Barret*, 824 F. Supp. 2d at 457 (citations omitted). Defendant's showing must be specific; abstract and conclusory claims will not suffice. *Id.* Where Defendant fails to make a showing sufficient for immediate disclosure, the Court may still set a deadline for pre-trial disclosure if it deems pre-trial disclosure is necessary for defense preparations. *See, e.g.*, *United States v. Lino*, 00-CR-632, 2001 WL 8356 at *21 (S.D.N.Y. Jan. 2, 2001) (Pauley, J.) (setting a deadline of ten business days prior to trial).

Here, Defendant has not made a specific showing of need concerning the witnesses the Government has stated it will rely upon, but has only made general statements about the difficulty of investigating long-ago crimes on a different continent with an enormously different culture. *See, e.g.*, Def. Mot. at 101-103; Oral Argument Tr. at 50:5-51:11. It is unclear to the Court why Defendant requires immediate disclosure when no trial date has been set. Moreover,

the Government has expressed concerns that premature identification of witnesses could lead to

significant safety and security concerns.  Oral Argument Tr. at 53:21-55:16.  Defendant's motion

is accordingly DENIED.  The Court will require the Government to disclose the identity of the

witnesses at an appropriate interval prior to the trial.

### D.  Jencks Act Material

Defendant moves the Court to "urge the [G]overnment to disclose 18 U.S.C. § 3500

material as early as possible." Def. Mot. at 103.

The Second Circuit has held the Jencks Act constrains the power of a district court to

order disclosure of Jencks Act material before trial. *United States v. Coppa*, 267 F.3d 132, 145

(2d Cir. 2001).  District courts within the Second Circuit have found the Government's pretrial

representations that it will disclose Jencks Act material before trial to act as adequate reassurance

that the Government will meet or exceed its Jencks Act obligations. *See, e.g.*, *Badoolah*, 2014

WL 4793787 at *17.

Here, the Government has provided adequate reassurance that it will meet or exceed its

Jencks Act obligations.  First, the Government represents it will disclose 18 U.S.C. § 3500 (the

"Jencks Act") material "in advance of trial."  Opp. at 58.  Second, the Government has

represented that it will disclose "substantially all" Jencks Act material for witnesses it intends to

call at the suppression hearing beginning "one month before the scheduled first day of the

hearings [on January 25, 2016]." *See* Stipulation.  Accordingly, the Court DENIES Defendant's

motion as to Jencks Act material.

### VII.    Motion to Compel Return of Defendant's Property

Defendant lastly moves the Court to order the Government to return Defendant's property

seized from Defendant upon arrest or, in the alternative, to hold a hearing pursuant to Federal

Rule of Criminal Procedure 41(g) regarding Defendant's seized property. Def. Mot. at 104-107; Reply at 60-61. The Government initially asserted it does not possess such property. Opp. at 59. However, the Government has since modified its assertion and now states it has nine items of Defendant's property which it will permit the Defense to inspect, but which it cannot return as the items are "relevant evidence of [Defendant's] crimes." Dkt. 72 ("Letter") at 1. The Government further states the other items of Defendant's property requested by Defendant are not in the Government's possession. *Id.*

The property the Government concedes it possesses consists of "cash, clothing and handwritten notes." Oral Argument Tr. at 40:11-40-18, 41:5-41:6. The Government is unwilling to return the cash to Defendant because the cash is "relevant evidence to the [G]overnment's investigation of [Defendant's] involvement in a kidnapping for ransom on behalf of the group al Qaeda [in] the Islamic Maghreb. The [G]overnment believes that that cash was . . . paid to [Defendant] for his share of the ransom that was given to the group for the release of certain European hostages. That cash is central evidence to an ongoing investigation[.]" *Id.* at 41:8-41:16. The Government is similarly unwilling to return the handwritten notes to Defendant because the Government states the notes "will be evidence at this trial" as "[t]hey include phone numbers and names that show [Defendant's] connection to various relevant associates and locations." *Id.* at 41:23-42:3. The Government has stated it does not think there will be an issue regarding the return of Defendant's clothes. *Id.* at 41:21-23.

On October 29, 2015, the Court stated the Government would not be compelled to turn over the cash and handwritten notes if the Government was holding such items for ongoing investigations or for use at trial, but ordered the Government to "turn over what you are prepared to turn over. You'll list what you're not prepared to turn over. And to the extent that the defense

disagrees with that, you'll make application to the Court[.] . . . The Court will rule as we always do." *Id.* at 42:20-43:1.4-43:1.  Accordingly, the Court hereby DENIES Defendant's request to order the Government to turn over the cash and handwritten notes, and RESERVES judgment on Defendant's motion for the return of any other property at issue.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's motion.  A five-day hearing on the suppression of the Statements at Issue and the eyewitness identifications will begin at 9:30 A.M. on January 25, 2016.

<u>**SO ORDERED**</u>

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: December ⁄ , 2015
       Brooklyn, New York