UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

ALHASSANE OULD MOHAMED, also known as
"Cheibani,"

                 Defendant.
------------------------------------------------------------X

**DECISION AND ORDER**
13-CR-527 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Mr. Alhassane Ould Mohamed ("Defendant") was indicted for Murder of an Internationally Protected Person and Attempted Murder of an Internationally Protected Person. On October 29, 2015, the Court scheduled a five-day suppression hearing to begin on January 25, 2016. On January 6, 2016, the Defendant gave notice to the Government of its intent to call Professor Brian L. Cutler, Ph.D., ("Dr. Cutler") as an expert witness. On January 8, 2016, seventeen days before the hearing, the Government moved the Court to preclude Dr. Cutler from testifying. The Court ordered an expedited briefing schedule. On January 18, 2016, the Defendant filed a request seeking permission to have the Defendant participate in the testimony of identification witnesses by live-audio feed from his cell block. For the reasons stated below, the Government's motion is GRANTED and the Defendant's request is DENIED.

## BACKGROUND

The Court assumes the parties' familiarity with the underlying facts and circumstances of the case and provides only a cursory recitation of relevant procedural history.

On September 13, 2013, the Government filed a two-count indictment against the Defendant. The first count charged the Defendant with the Murder of an Internationally Protected Person in violation of 18 U.S.C. §§ 1116(a), 1116(c), and 1111(b). Indictment ¶¶ 19–20, ECF No. 1. The second count charged the Defendant with the Attempted Murder of an Internationally Protected Person in violation of 18 U.S.C. §§ 1116(a), 1116(c), and 1113. *Id.* ¶¶ 21–22.

Given the seriousness of the charges against the Defendant, his prior murder conviction, and his alleged connections to multiple active terrorist groups, the Court delayed disclosure of

1

the Government's witness list, but scheduled a five-day suppression hearing to begin on January 25, 2016. Decision & Order, ECF No. 85.

On January 6, 2016, the Defendant gave notice of his intent to call Dr. Cutler as an expert witness in "the psychology of eyewitness identification" at the suppression hearing. Def.'s Letter, ECF No. 96; Fed. R. Crim. P. 16(b)(1)(C). According to the notice, Dr. Cutler will testify on (1) the suggestiveness of the identification procedures used in the case, (2) the correlation between the accuracy of an identification and an eyewitness's confidence in an identification, and (3) the factors that contribute to the encoding, storage, and alteration of an eyewitness's memory. Def.'s Letter 1, ECF No. 96.

On January 8, 2016, the Government moved to preclude the testimony of Dr. Cutler on three grounds. Gov't Mot. Exclude, ECF No. 99. First, the Government argued that Dr. Cutler's testimony should be excluded as unnecessary and improper. Second, the Government alleged that the Defendant's "eleventh hour" notice, coupled with the "controversial nature" of Dr. Cutler's testimony, required the Court to preclude the testimony. *Id.* at 3. Third, the Government asked that Dr. Cutler be excluded from the courtroom should he be permitted to testify at the suppression hearing. *Id.* Due to the proximity of the suppression hearing, the Court granted an expedited briefing schedule.[1]

---

[1] The expedited briefing schedule provided Defendant's counsel with five days to respond to the Government's motion to exclude. Contrary to the Defendant's claims, the Defendant was afforded the same amount of time to prepare and file its opposition as the Government was afforded to file its reply. It should also be noted the Government filed its initial motion to preclude the testimony of Dr. Cutler within forty-eight hours. Given the quality of the Defendant's response, as well as the Court's consideration of the Defendant's supplemental papers (Def.'s Supp. Letter, ECF No. 109) and the Defendant's request for oral argument (Def.'s Resp., ECF No. 114), the Court finds neither the Defendant's rights to due process nor his rights to the effective assistance of counsel have been violated.

In a separate matter, the Defendant filed a letter seeking the Court's permission to have the Defendant participate in the testimony of identification witnesses by live-audio feed from his cell block. Def.'s Letter, ECF No. 110. The request sought to "prevent any possible future in-court identification from being bolstered or reinforced by the witnesses' viewing of [the Defendant] during the pretrial proceedings." *Id.* at 1.

After review of the parties' papers and oral arguments and for the reasons stated below, the Court hereby GRANTS the Government's motion to preclude the testimony of Dr. Cutler and DENIES the Defendant's request to proceed by live-audio feed.

## ANALYSIS

### I. Motion to Preclude the Testimony of Dr. Cutler

The Government seeks preclusion of Dr. Cutler's expert testimony at the suppression hearing. The decision to admit or to exclude expert testimony falls squarely within the discretion of the trial court.[2] *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999) ("A decision to exclude expert testimony rests soundly with the discretion of the trial court and shall be sustained unless manifestly erroneous." (internal citation and quotation marks omitted)). The Court is guided by Federal Rule of Evidence 702 and a trilogy of Supreme Court cases—*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *General Electric Co. v. Joiner*, 522 U.S. 136 (1997), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

---

[2] While the Court takes guidance from the cases cited by the parties, the Court notes as a preliminary matter that these cases rest on the assumption that the audience of Dr. Cutler's testimony would be a jury, when the audience at this hearing will be the Court itself. The Court notes, Ms. Whalen, as counsel for the Defendant, appropriately addressed and clarified this issue during oral argument on the motion earlier today.

3

Both Federal Rule of Evidence 702 and *Daubert* require a district court to inquire into the relevance and reliability of proposed expert testimony. The four subsections of Rule 702[3] outline this inquiry. Subsection (a) addresses the relevance of an expert witness's proposed testimony, while subsections (b) through (d) consider the reliability of the proposed expert testimony. Similarly, *Daubert* directs the district court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589.

The current dispute focuses on the relevance of Dr. Cutler's proposed testimony. The Government argues that Dr. Cutler's testimony at the suppression hearing "would improperly usurp th[e] Court's role in determining the relevant legal issues and would not assist the Court in assessing the testimony of the government's eyewitnesses." Gov't Mot. Preclude 4, ECF No. 99. The Defendant responds that Dr. Cutler's testimony "can only assist and cannot possibly hinder th[e] Court in deciding" the relevant issues at the suppression hearing. Def.'s Reply 2, ECF No. 108. For the reasons stated below, the Court GRANTS the Government's motion to preclude the testimony of Dr. Cutler.[4]

---

[3] Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

[4] Because the Court grants the Government's motion to preclude the testimony of Dr. Cutler, the timeliness of the Defendant's notice to call Dr. Cutler as an expert witness is MOOT.

First, expert witnesses cannot supplant their opinion for that of the factfinder. *See United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (Expert witnesses "act[] outside of [their] limited role" when they "attempt[] to substitute [their] judgment for the jury's."). Should Dr. Cutler testify that the identification procedures used in this case were unduly suggestive, he would be inserting his opinion as to eyewitness credibility in place of the Court's. Similarly, "a witness's demeanor on the stand, including his or her confidence, impacts the assessment of credibility. By testifying that confidence bears little or no relationship to accuracy in identifications, [the expert witness] would effectively have inserted his own view of the officers' credibility for that of the jurors, thereby usurping their role." *Lumpkin*, 192 F.3d at 289. As such, Dr. Cutler's testimony on the suggestiveness of identification procedures and the correlation between eyewitness confidence and identification accuracy, Def.'s Letter 1, ECF No. 95; *see also* Def.'s Supp. Letter 2, ECF No. 109, would usurp the Court's role in determining the credibility, and thus admissibility, of eyewitnesses.

Second, expert witnesses are unnecessary when the factfinder is "as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training." *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962). An expert must demonstrate "knowledge, skill, experience, training, or education" beyond that of the factfinder. Fed. R. Evid. 704. Dr. Cutler's testimony about the "psychology of eyewitness identification"—testimony about factors affecting memory such as distance, exposure time, time overestimation, lighting, weapon focus, and head coverings, Def.'s Letter 1, ECF No. 95; Def.'s Supp. Letter 1–2, ECF No. 109—are within the common knowledge of the Court. The Court is more than competent to take into consideration memory-disrupting factors without the aid of an expert.

The exclusion of Dr. Cutler's testimony, however, does not leave the Defendant without protection. The Court finds that cross-examination is sufficient to achieve the same effect as the proposed testimony of Dr. Cutler. *See Davis v. Alaska*, 415 U.S. 308, 316 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested."); *California v. Green*, 399 U.S. 149, 158 (1970) (describing cross-examination as the "greatest legal engine ever invented for the discovery of truth"). The Court further finds that "a very detailed instruction to the jury regarding the evaluation of eyewitness identification evidence" will adequately protect the Defendant from any harm that may arise from the exclusion of Dr. Cutler's testimony. *Young v. Conway*, 698 F.3d 69, 79 (2d Cir. 2012). Indeed, the Second Circuit has cautioned that "much eyewitness identification testimony is reliable and is, and should be, routinely accepted by juries." *Id.* at 80.

## II.   Request to Permit the Defendant to Listen to Testimony of Identifying Witnesses by Live-Audio Feed

The Defendant, through his counsel, requests that the Court permit the Defendant to listen to the testimony of certain identification witnesses by live-audio feed from his cell block. Def.'s Letter, ECF No. 110. The reason for this request is to "prevent any future identification from being reinforced by [the Defendant's] presence at counsel table during the pretrial hearing" should the Court find that the photographic arrays used to identify the Defendant were unduly suggestive. Def.'s Letter 1–2, ECF No. 110.

Although the Defendant may elect to waive his Sixth Amendment right to confrontation through his counsel, the Court is not compelled to embrace that waiver. *United States v. Plitman*, 194 F.3d 59, 64 (2d Cir. 1999) (holding that "defense counsel may waive a defendant's Sixth Amendment right to confrontation where the decision is one of trial tactics or strategy that might be considered sound"); *Clark v. Stinson*, 214 F.3d 315 (2d Cir. 2000) (permitting an

implied "voluntary and knowing waiver of the right to be present" through the defendant's conduct). The Court DENIES the request.

*United States v. Archibald*, 734 F.2d 938 (2d Cir. 1984), does not require the Court to rule differently. In *Archibald*, the trial judge refused to grant the defendant's request for a corporeal lineup before trial. *Id.* at 941. This denial resulted in the defendant being "the only black person in the courtroom, except for one day when a black United States Marshal was present." *Id.* at 940. The Court of Appeals for the Second Circuit found that "[t]he in-court identification procedure utilized . . . was so clearly suggestive as to be impermissible." *Id.* at 942–43. The Court of Appeals clarified that while a court has no obligation to stage a lineup, a court does have "an obligation to ensure that the in-court procedure . . . did not simply amount to a 'show-up.'" *Id.* at 941 (internal quotation marks and revisions omitted).

This Court is not required to grant the Defendant's request to absent himself from the courtroom, particularly given the problems with the electronics available in this Courtroom, as acknowledged by the Defendant's counsel. The proper remedy for a defendant aware of "irreparable suggestivity" is "to move for a line-up order." *Id.* at 942. The Defendant's presence in the courtroom guarantees his Sixth Amendment rights, while his absence would not. Should the Court experience technical difficulties with the live-audio feed,[5] the Defendant's Sixth Amendment right to confrontation would be violated. In contrast, the Defendant will now have the opportunity to converse in real time with his attorneys and with Dr. Cutler.

### III. Motion to Sequester Dr. Cutler from the Courtroom

Dr. Cutler will be permitted to sit with the Defendant and his counsel during the suppression hearing. As the Defendant has made clear, Dr. Cutler's presence at the hearing is

---

[5] The Court takes judicial notice of previous technical difficulties with the live-audio feed.

essential because "[his] presence is necessary to assist the defense lawyers in fashioning their cross-examination of the eyewitnesses." Def.'s Resp. 21, ECF No. 108. Any harm that may result from the preclusion of Dr. Cutler's testimony at the suppression hearing is treatable through effective cross-examination and a detailed jury instruction. *Supra*. Accordingly, the Court hereby allows Dr. Cutler's presence at the suppression hearing and throughout the trial of this case alongside the Defendant and Defense counsel.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's motion to preclude the testimony of Dr. Cutler and DENIES the Defendant's request to have the Defendant participate in the testimony of identification witnesses by live-audio feed.

**SO ORDERED**

S/ William F. Kuntz, II
HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: January 21, 2016
Brooklyn, New York

8