UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                :
                                         :
            v.                           :    **MEMORANDUM AND ORDER**
                                         :    13-CR-527
ALHASSANE OULD MOHAMED,                  :
    also known as "Cheibani,"            :
                                         :
                     Defendant.          :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**
On March 24, 2016, the Court accepted the guilty plea of Defendant Alhassane Ould Mohamed, also known as "Cheibani," ("Defendant") to a superseding information pursuant a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Plea Hearing, ECF No. 151. The plea agreement specified an agreed-upon sentence of three-hundred months (or twenty-five years) of imprisonment and five years of supervised release. Plea Agreement ¶ 2, ECF No. 152. The Court now ACCEPTS the parties' Rule 11(c)(1)(C) plea agreement and provides a complete statement of reasons. For the reasons stated below, Defendant is hereby sentenced to three-hundred months (or twenty-five years) of incarceration and five years of supervised release.

## BACKGROUND

During a carjacking in the early morning hours of December 23, 2000 in Niamey, Niger, Defendant and an unknown co-conspirator shot two United States diplomats, William Bultemeier and Christopher McNeely. Indictment, ECF No. 1. William Bultemeier died of his wounds, and Christopher McNeely suffered permanent injury. *Id.* On September 13, 2013, Defendant was indicted for one count of Murder of an Internationally Protected Person and one count of Attempted Murder of an Internationally Protected Person. *Id.*

On March 24, 2016, Defendant waived his right to prosecution by indictment and consented to prosecution by information. Waiver of Indictment, ECF No. 149. Defendant then entered a plea of guilty to a single-count superseding information that charged him with Conspiracy to Commit Murder. Plea Agreement ¶ 1; Plea Hearing. Defendant's guilty plea was

1

conditioned upon the Court's acceptance of the parties' plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Superseding Information, ECF No. 150; *see United States v. Pimentel*, 932 F.2d 1029, 1033–34 (2d Cir. 1991) (discussing prosecutorial considerations in "sentence bargaining").

At the conclusion of the plea hearing, the Court accepted Defendant's plea of guilty, but deferred its decision on whether to accept the plea agreement. *See* Plea Hearing. The parties' plea agreement specified a three-hundred month (twenty-five year) term of incarceration followed by a five-year term of supervised release. Plea Agreement ¶ 2. The plea agreement also included a provision regarding Defendant's removal, specifically "request[ing] that the Court, at the time of sentencing, order that the defendant be removed from the United States promptly upon his release from confinement." *Id.* ¶ 5.

## DISCUSSION

### I. Legal Standard

The parties have agreed that the specified imprisonment and supervised release terms are not based on the Guidelines. Plea Agreement ¶ 2. The Court must, nevertheless, consider the Guidelines in deciding whether to accept the plea agreement. *See* United States Sentencing Guidelines § 6B1.2 (U.S. Sentencing Comm'n 2015) ("U.S.S.G." or "the Guidelines"). Under Guidelines § 6B1.2, the Court may accept a sentence bargain under Federal Rule of Criminal Procedure 11(c)(1)(C) if either "the agreed sentence is within the applicable guideline range" or "the recommended sentence is outside the applicable guideline range for justifiable reasons . . . and . . . those reasons are set forth with specificity in the statement of reasons form." *Id.* §§ 6B1.2(c)(1)–(2).

2

The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). The Court may find by a preponderance of the evidence the facts necessary to determine the sentencing range. *See United States v. Garcia*, 413 F.3d 201, 220 n.15 (2d Cir. 2005). In the usual course, the Court "will accept a defendant's guilty plea as soon as it is entered, but will defer acceptance of the plea agreement until it has reviewed the pre-sentence report." *United States v. Lopez*, 385 F.3d 245, 249 (2d Cir. 2004); Fed. R. Crim. P. 11(c)(3). Here, the parties waived the pre-sentence report, and the Court deferred acceptance of the plea agreement until sentencing.

If the agreed-upon sentence falls within the Guidelines sentencing range, then the Court may accept the plea agreement. U.S.S.G. § 6B2.3(c)(1). The Court may also accept the plea agreement if the agreed-upon sentence falls outside the applicable guideline range, but the Court must provide "justifiable reasons" for the departure from the sentencing range and "set forth [those reasons] with specificity in the statement of reasons form." *Id.* §§ 6B2.3(c)(2)(A), (B).

Acceptance of the plea agreement binds the Court to the specific sentence agreed upon by the parties in the plea agreement. Fed. R. Crim. P. 11(c)(1)(C) ("[A] recommendation or request binds the court once the court accepts the plea agreement[.]"). Rejection of the plea agreement, or deviation from the "sentence bargain," permits Defendant to withdraw his guilty plea. *See* Fed. R. Crim. P. 11(c)(5); U.S.S.G. § 6B1.3.

The Court finds that the sentence bargain falls within the Guidelines sentencing range. The Court nevertheless considers 18 U.S.C. § 3553(a), which outlines the procedures for imposing sentence in a criminal case. *See* 18 U.S.C. § 3553(a). The Court also provides a statement of reasons, "a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under [Section] 3553(a)." *United States v. Davis*, 08-

CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted).

## II. Analysis

The Court begins by analyzing whether the agreed-upon sentence falls within the Guidelines sentencing range. The Court then proceeds to address each of the remaining 18 U.S.C. § 3553(a) factors in turn.

### 1. The Kinds of Sentences Available

The Court first considers "the kinds of sentences available" as set forth by Congress and the President. 18 U.S.C. § 3553(a)(3). Defendant pled guilty to Conspiracy to Murder in violation of 18 U.S.C. § 1117. Plea Agreement ¶ 1; 18 U.S.C. § 1117 ("If two or more persons conspire to violate section 1111, 1114, 1116, or 1119 of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life."). This violation carries a maximum imprisonment term of life, *id.*, and a term of supervised release of no more than five years, *id.* § 3583(b)(1). This violation further carries a maximum fine of $250,000.00, *id.* § 3571(b)(3); a mandatory $100.00 special assessment, *id.* § 3013; and the possibility of Court-imposed costs of prosecution, U.S.S.G. § 5E1.5; *see United States v. Mordini*, 366 F.3d 93, 94–95 (2d Cir. 2004) (finding that costs imposed shall not exceed the maximum guideline fine unless departure is justified). The parties' agreed-upon sentence of twenty-five years' imprisonment and five years' supervised release falls within the kinds of sentences available to Defendant.

4

## 2. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The Court now turns to "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Defendant's violation of 18 U.S.C. § 1117 falls within Guidelines § 2A1.5(c), titled "Conspiracy or Solicitation to Commit Murder," which refers to Guidelines § 2A2.1, titled "Assault with Intent to Commit Murder; Attempted Murder." U.S.S.G. § 2A1.5(c)(2). This Section provides a base offense level of twenty-seven. *Id.* § 2A2.1(a)(2).

The base offense level is adjusted given the nature of Defendant's crime. Because the victim of Defendant's crime sustained permanent or life-threatening bodily injury, the base offense level is increased by four levels. *Id.* § 2A2.1(b)(1)(A). Furthermore, the victim of Defendant's crime was "a government officer or employee," adding three offense levels. *Id.* § 3A1.2(a). Guidelines § 3A1.2(b) further requires an increase of six offense levels, as the offense was motivated by the victim's status as a government officer. *Id.* § 3A1.2(b). Defendant's acceptance of responsibility, however, reduces the offense level by three levels. *Id.* § 3E.1.1. Accounting for these adjustments, Defendant has a Guidelines offense level of thirty-seven.

The Court concludes that Defendant has a criminal history category of IV. Because the parties have waived a pre-sentence investigation report, the Court cannot refer to the pre-sentence report for a detailed account of Defendant's criminal history. Defendant has three prior criminal arrests on record: (1) an arrest in Niamey, Niger on March 20, 1997 for car theft, where he spent three days in jail; (2) an arrest in Bamako, Mali on February 3, 2010 for the armed robbery and murder of four Saudi Arabian officials, and (3) an arrest for fraud in Algeria. Rule

5

16 Letter at 2, ECF No. 11; *see also* Def.'s Mot. Dismiss Ex. Part A, at 14 (three days in jail for car theft). The parties also refer to Defendant's escape from Malian custody on May 3, 2002, *see, e.g.*, Additional Discovery Letter at 2, ECF No. 51, and a criminal arrest in northern Mali on November 24, 2013, *see, e.g.*, Supplemental Discovery Letter ¶¶ 22–23, ECF No. 31.

These five alleged crimes result in a Criminal History Category of III or IV, depending on the severity of Defendant's crimes. *See* U.S.S.G. § 4A1.1. With an offense level of thirty-seven, Defendant's Guidelines sentence would either be 262 to 327 months of incarceration (for a criminal history category of III) or 292 to 365 months imprisonment (for a criminal history category of IV). *Id.* Ch. 5 Pt. A. The agreed-upon sentence of 300 months falls within both ranges.

The Guidelines further recommend a supervised release term of at least two years but not more than five years for Defendant's Class A felony, *id.* § 5D1.2(a)(1), and a fine between $50,000.00 and $500,000.00, *id.* § 5E1.2(c). Defendant's applicable guideline range is in Zone D of the Sentencing Table, making Defendant ineligible for probation. *Id.* § 5B1.1, cmt.(n.2). The agreed-upon five year's supervised release falls within these additional recommendations.

\* \* \*

For the reasons provided above, the Court accepts the parties' Rule 11(c)(1)(C) plea agreement. Nevertheless, the Court addresses the remaining § 3553(a) factors to further support the specific sentence agreed-upon by the parties.

### 3. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The Court evaluates the first Section 3553(a) factor: "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

On the evening of December 22, 2000, about a dozen employees of the United States Embassy in Niamey, Niger, went to the La Cloche restaurant in Niamey. Indictment ¶ 8. Mr. Bultemeier, a retired U.S. Army Master Sergeant and a civilian employee of the U.S. Department of Defense deployed to the U.S. Embassy in Niamey in July of 2000, drove to the restaurant in a white Toyota Land Cruiser bearing a diplomatic license plate. *Id.* ¶¶ 2–4, 9. He was scheduled to return home to North Carolina the following day, December 23, 2000. *Id.* ¶ 3.

In the early morning hours of December 23, 2000, the party exited La Cloche. *Id.* ¶ 10. Mr. Bultemeier, according to a witness's testimony, walked to the diplomatic vehicle and opened the driver-side door. *Id.* ¶ 11. Mr. Bultemeier then heard a voice belonging to an unknown male, who demanded the keys to the vehicle. *Id.* ¶ 11. As Mr. Bultemeier turned, the unknown male shot Mr. Bultemeier in the chest. *Id.* ¶ 12. Mr. Bultemeier fell to the ground. *Id.* ¶ 13.

Mr. Christopher McNeely, a United States Marine Corps Staff Sergeant and Marine Detachment Commander deployed to the U.S. Embassy in Niamey in October of 2000, ran to Mr. Bultemeier's aid. *Id.* ¶¶ 5–7, 13. Defendant, armed with an AK-47 assault rifle, fired several times, hitting Mr. McNeely and knocking him to the ground. *Id.* ¶ 14.

Defendant and his co-conspirator retrieved the keys to the white Toyota Land Cruiser from Mr. Bultemeier as he lay dying. *Id.* ¶ 15. Defendant and his co-conspirator entered the vehicle and fled. *Id.* ¶ 16. Mr. Bultemeier died from his wounds, and Mr. McNeely suffered permanent injury. *Id.* ¶¶ 17–18.

Malian authorities located the stolen Land Cruiser in Timbuktu, Mali, on December 26, 2000, and soon thereafter arrested Defendant. Mot. Limine, Ex. A, at 2, ECF No. 29. However, on May 3, 2002, Defendant escaped from custody in Bamako, Mali. *Id.* Defendant was again arrested in Northern Mali on November 25, 2013. Mot. Limine at 4, ECF No. 29. On March 12,

2014, Defendant was transferred to the United States. *Id.* Defendant was indicted on September 13, 2013 for one count of Murder of an Internationally Protected Person and one count of Attempted Murder of an Internationally Protected Person. Indictment ¶¶ 4, 7.

### 4. The Need for the Sentence Imposed

The next Section 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The Court addresses each subsection in turn.

#### a. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment

The Court finds the agreed-upon sentence necessary and sufficient to accomplish the purposes of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. *See id.* § 3553(a)(2)(A).

Defendant, during a carjacking of a diplomatic vehicle, shot a United States diplomat in Niamey, Niger. Defendant's crime is serious, and the agreed-upon sentence of three-hundred months (twenty-five years) imprisonment with five years' supervised release reflects this seriousness. This sentence also accounts for the various other crimes that Defendant has committed. *See supra* Part II.2 (calculating Defendant's criminal history category). Thus, the agreed-upon sentence is consistent with and sufficient but no greater than necessary to accomplish the purposes of 18 U.S.C. § 3553(a)(2)(A).

### b. Affording Adequate Deterrence to Criminal Conduct

"Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." *Davis*, 2010 WL 1221709, at *2. The Court finds that its sentence affords adequate deterrence, both specific and general, to Defendant's criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B).

The specific deterrent is clear: Defendant will be incarcerated for a quarter of a century. Twenty-five years of incarceration will sever Defendant's ties to any remaining contacts he may have with individuals in active terrorist cells in Northern Africa. Furthermore, the significant sentence will prevent Defendant, given his age, from meaningfully rejoining any terrorist group.

Regarding general deterrence, the Court's sentence sends a strong signal to any foreign criminal and terrorist group that the United States will track down, prosecute, and bring to justice any person who harms American citizens or interests, no matter the time or distance. *See* Decision & Order at 2–5, ECF No. 85 (denying dismissal of the indictment on statute of limitations grounds even though thirteen years elapsed since the indicted crime). At the same time, the Court maintains the rule of law. The Court's sentence meaningfully grants a foreign criminal and alleged terrorist the protections of the Constitution and its guarantees of Due Process.

### c. Protecting the Public from Further Crimes of the Defendant

The agreed-upon sentence sufficiently protects the public from further crimes of the Defendant. Given the seriousness of Defendant's crime, the Court's significant sentence of twenty-five years, followed by five years of supervised release and removal immediately upon Defendant's release from confinement, achieves the goal of protecting the public. Furthermore,

this sentence takes into account the possibility of Defendant's aid to the U.S. Government in preventing further crimes by individuals similar to Defendant. *See* Plea Agreement ¶ 7.

### d. Providing Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

The Court turns to the next Section 3553(a) factor and looks to Defendant's need for educational or vocational training, medical care, or other correctional treatment. Defendant suffers from various injuries, but most concerning is his lung condition. *See* Letters, ECF Nos. 20–22. During Defendant's term of incarceration, he is to receive medical treatment for his lung.

### 5. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth Section 3553(a) factor requires the Court to evaluate "any pertinent policy statement [] issued by the Sentencing Commission[.]" 18 U.S.C. § 3553(a)(5). There are no pertinent policy statements with respect to Defendant's particular criminal conduct, and therefore, this factor is not relevant in the Court's sentencing analysis.

### 6. The Need to Avoid Unwarranted Sentence Disparities

The sixth Section 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6).

Under Federal Rule of Criminal Procedure 11(c)(1)(C), the parties' "recommendation or request binds the court" upon the court's acceptance of the plea agreement. Fed. R. Crim. P. 11(c)(1)(C). Because of the mutual nature of this agreement, there is little risk of sentencing disparity under this provision. Moreover, the agreed-upon sentence falls within the Guidelines sentencing range.

### 7. The Need to Provide Restitution

Lastly, the seventh Section 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). The parties have not presented the Court with any evidence of wrongfully-procured pecuniary gains. Restitution, therefore, is not a consideration in Defendant's sentence. *See* Plea Agreement ¶ 1(e).

## CONCLUSION

The Court ACCEPTS the plea agreement and sentences Defendant to three-hundred months' (or twenty-five years') incarceration followed by five years of supervised release. Furthermore, pursuant to paragraph 5 of Defendant's plea agreement, the Court ORDERS that Defendant be removed from the United States promptly upon his release from confinement. Finally, Defendant is not to be fined, but must pay the $100.00 mandatory assessment fee.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 26, 2016
Brooklyn, New York